Good morning, Your Honors. I'm John Linehan on behalf of the Appellant, Mr. Leon. I will restrict my argument to the one certified issue. I would love to argue the second one, but I've only got ten minutes. So this will be the issue concerning whether or not there was a violation of due process on the fact that the trial court entered or kept a verdict on a sentencing enhancement under California law when, in fact, a juror stated in open court that, in fact, it was not her verdict. Let me inquire as to the sequence of events. Sure. Because it seems to me that, as I understand the transcript, for counts two and five, Right. the jury panel affirmed that these are their verdicts. The counsel were asked if they want to have the jury polled. All three lawyers said no. Reading of the verdicts was waived, and the clerk was ordered to enter the verdicts, and the verdicts were recorded. Right. And it was only after that that there was this colloquy that led to somebody saying, Oh, by the way, I didn't really mean it. And my question to you is whether, under People v. Bento, there's any effect whatsoever to what happened after the recording of the verdicts. In other words, once those verdicts are recorded, as I understand California law, it doesn't matter what anybody says after that, that a juror can have whatever second thoughts they wish or whatever comments about what happened before the verdict was entered, but it's done. There's, like, no way to go back. Do you understand the law to be that or not? Well, I think the difference is I think this actually occurred simultaneously in open court. Well, it isn't simultaneous. Well, I think it's probably within about two or three minutes or less. But it was after a juror was discharged, so there was no longer the jury that had made the decision. But there was, actually, while the jurors still remained. I mean, ultimately, I think the concern in Bento was that if you were trying to come back after a verdict and somehow impeach it, the only possible way you could do it, if it was in another proceeding, would be you would have to get a sworn declaration, which there wasn't in this case. But what happened in court was that they record the verdict, but then it appears that they are actually polling. No, but they discharged a juror before the polling, in quotes, occurred. And so, again, as I understand California law, and I've never been a California lawyer, so I may be totally wrong about this, there have to be 12 jurors and they have to be unanimous in a criminal case, as I understand it. So now you have 11 jurors, so you don't even have the jury anymore. So how could polling possibly matter? Well, even assuming, I mean, let's assume by discharging one juror because they had a scheduling, it was done, they had a vacation, it was gone. But then you have the remaining jurors, and when they now are in open court, that actually, I agree with you, the verdict was recorded. But then the trial court actually does then engage in what appears to be polling of the jury. I guess my question is how can that possibly be of any legal effect after the verdicts are recorded and one of the jurors is excused? Because you have essentially uncontradicted evidence in court that the verdict is not unanimous, that you have a statement by one juror that is saying either we didn't agree or we didn't deliberate on it, and then there's, after the verdict is recorded, then they are polling all that they actually. What if this had happened the next day and juror number five came in and said, you know, my conscience is bothering me because I really feel bad about how things turned out in court yesterday and now here I am to tell you, what's the result? Then I think actually what they would have to do is there would have to be a motion in which there had to be a sworn declaration by the juror. And you think that would work under California law as being. Well, you would have a base. Use the verdict that way? I think, yes, if you can, I mean, you can raise an issue of juror misconduct. Why is this misconduct as distinct from not maybe deliberating in the most appropriate manner? I mean, misconduct might be somebody came in and bribed us, but this isn't that. It's like, well, I don't think we talked about that, and I don't really think I agree with that. I think there is California law that says if you don't deliberate and you don't actually deliberate on a charge and come back with a verdict, it is actually misconduct. You cannot reach a unanimous verdict if you don't deliberate on it. What if a jury, having heard everything, what if they select a presiding juror who says, why don't we just take a straw poll before we talk, everybody write on a slip of paper what you would do, and they all say guilty, exclamation point, and they decide, okay, well, I guess there's nothing to talk about. We all agree. Is that misconduct? Well, it's not misconduct on the one in which you say guilty, exclamation point, but these have sentencing enhancements. Well, regardless, I guess the point is my example was designed to be an example of no deliberation in the sense of discussion. Is that wrong under California law? Is that impermissible? It would be impermissible to then return a verdict on something they hadn't deliberated on. Well, that's my question. What does deliberation mean when they say, in my example, they all agree in the first straw poll. Nobody talks about the merits of anything. They just go right to voting, and they all agree, and they say, well, this was easy. Let's go home. Well, because they're specifically instructed they have to not only consider every offense, but they also have to consider every enhancement, and it's required under California law. First, it has to be proven, the enhancements have to be proven beyond a reasonable doubt. I understand that. I guess what I'm trying to explore is what does it mean to deliberate under California law, and is it misconduct not to talk about something before voting on it per se? Well, if someone has said we didn't even discuss it, which is what was said in court. Right, which was my example exactly. So if we didn't even discuss it, it is. Oh, I think you guys are having a disconnect. Because the Juror 12, the implication is that we never even voted on this. Right. That's what she's saying, and so it's different from the example Judge Herbert gave. Right. I mean, yeah, if you don't discuss it, you can't vote on it. The Juror 12 was like, I never voted on this. I'm here to tell you that that's not even my verdict. Now, the other ten jurors who remain, they do vote, but they may well have been voting in the moment right there in court for all we know. I guess, though, my problem with your argument is a little bit different. I assume that once the jury verdict was recorded, your client would then have to show some kind of misconduct. Your theory is that there was a lack of deliberation on this particular enhancement. The state court nonetheless made a factual finding, I think, or at least an implied finding, didn't it, that because the other ten jurors went around and said no, they affirmed that that was their verdict, and they did it right in front of Juror 12, that the implication was, well, maybe Juror 12 was just mistaken, and why under AEDPA would we have to defer to that? Okay. Essentially, there's two parts to the argument, and I think your question, Judge Rockford, is first, I think probably one thing that's true under AEDPA, that this wasn't necessarily juror misconduct because one could find that a reasonable trier of fact or a reasonable person, a jurist could look at this and say, well, maybe she was just wrong, and therefore when she said we didn't deliberate, and oops, turns out we actually did. So that might be a way to deal with a Sixth Amendment claim, but I don't see how they can get around Hicks. Hicks requires that it be unanimous, and unanimous requires they all have to agree. Eleven out of twelve isn't enough. I agree with you on that, but I thought California law was clear that for whatever reason, the state had just decided we're going to draw a bright line at recordation of the verdict. And after that, as in, say, Judge Graber's example, where the juror comes back the next day and says, sorry, I've changed my mind. No. I understand California law would say, no, that's not good enough. Even though at that point the verdict is no longer unanimous, you must show some kind of misconduct to impeach the verdict that's already been recorded. Am I wrong on that? Well, I think the purpose is you do have to show that there's, you have to show by reliable evidence, and you have to come in and show that there is a basis for misconduct. But the misconduct that would be shown, and actually I think the Court of Appeals actually, the State Court of Appeals actually was concerned about this. What they said is we thought that the judge should have actually inquired under People v. Hayes. Nobody made such a request. So there was a concern, even by the Court of Appeals in this analysis, there was sort of a where there's smoke there's fire. So there was a concern that there was something that should have been further examined. I'm trying to get to the, as I read Bento basically, it was drawing a bright line. But the reason was to stop people from coming back in without reliable evidence saying somehow or other we changed our mind. And so one can impeach a jury's verdict by coming in and saying misconduct, saying yes, it was recorded, but there were things you didn't know about, and they have to be sworn, and then they can order a hearing. This happened in open court, though. But you had ten other jurors who, again, we're going to just draw inferences because we didn't have a full-fledged hearing. The inference one would draw from the other ten jurors' responses is that no, in fact, there was deliberation. Each of those ten people deliberated. For whatever reason, this one juror has forgotten or is mistaken about there being a lack of deliberation, and therefore no misconduct occurred. But she says in open court it wasn't unanimous and they did poll afterwards, after the verdict was recorded, and she says, is that your verdict? And she says no. I know, but the jury verdict had already been recorded. And earlier she said yes. They all said yes. Well, but ultimately what we're left with is a record in state court in which you have one jury, even if everyone else had said we had all deliberated and we all came, and even if the dismissed juror had said I went along with it, 11 out of 12 is not unanimous. So I think I've run over my time. We'll give you a couple of minutes to rebuttal because we took a lot of your time. Thank you. Good morning, Your Honors. May it please the Court. Alistair Agkwili, Deputy Attorney General for the Appellee. Going off Judge Wadsworth's question here, because this is an AEDPA case, I think the real issue in this case is whether the state trial court made a reasonable factual finding that the jury actually deliberated on the gang enhancement applied to appellant's sentence. And based on the record that we have and based on the fact that AEDPA, you know, the AEDPA standard of review is quite deferential, fair-bounded jurists can say that that was a reasonable factual finding. The state trial court did hear, we do have the statement from Juror 12, that she did not recall whether the jury deliberated. However, it was reasonable for the state trial court to discount that statement for a number of reasons. First, one of the reasons that Judge Graber pointed out, she actually, he or she, I'm not sure if the record indicates that the juror is a man or a woman, indicated twice before that statement that that was the juror's verdict. She indicated that during the collective polling that happened when the verdict was read in court before it was recorded. Remind me, I don't remember the details of that. So what happened in that? Yes, Your Honor. The verdicts came out, it was a partial verdict on Count 2 which was to appellant and Count 5 which was to codefendant. The clerk of court read both verdicts aloud in court and asked the jury, is this your verdict? And all the jurors in a collective polling poll said yes, including Juror 12. It wasn't individual, everybody just said yes. Yes. From the jury panel, yes, Your Honor. Yes. At that point, the verdict was recorded. And then Juror 5, I believe, indicated some ambiguity as to whether the jury had deliberated on the gang enhancement as applied to codefendant. Now, in that context, the state trial court then individually polled every juror as to Count 2, the count that applied to appellant, and the gang enhancement as applied to appellant. And in the context of that individual polling, Juror 12 also said yes, that is my verdict. So we have twice that Juror 12 said yes. And then in the context subsequent to that, the trial court polled the jury on the gang enhancement as to the codefendant. Now, this was a totally separate gang enhancement. Are you sure you're not getting that flipped around? I thought Juror 12, the first time, I think it was a she, she was individually polled about Count 2 that relates to our petitioner. I thought she said, no, that's not my verdict, and I don't think we even deliberated about that. No, Your Honor. It's at ER 76 and 77, and the juror was, it's actually page 7, I believe. 75. 74, 75, and 76. The court reads Count 2, including the gang enhancement and the firearm enhancement, and asks the jury individually, was this your verdict? And on page 76 of the record, Juror 12, actually it's on 77. It says yes. Yes. Give me the, I don't have the ER numbers for some reason on this. Can you give me the, what's the actual number? 1928. Yes, Your Honor. It's 1928, 1929, and then 1930 is Juror 12 saying yes. And so at that point we have Juror 12 saying yes twice, that she had reached the verdict, the true finding on the gang enhancement. Following that, the state trial court then polled the jury individually on the separate count as to co-defendant. And in that context, Juror 12 expressed her, and her ambiguous statement comes out that, wait a minute, I didn't deliberate on the gang enhancement as applied to co-defendant. Hang on, I'm sorry to interrupt. Sure, Your Honor. I just want to make sure I'm getting this straight. The thing on page 1929, I guess? Yes. Isn't that asking about the firearm enhancement, and aren't we talking here about the gang enhancement? But the page before that. The page 1928, we further find that the defendant, Jose Luis Leon, did commit the above felony offense for the benefit of or at the direction of and in association with the criminal street gang with the specific intent, et cetera. That's at the bottom of page 75 or 1928. I see. And we further find that he personally used a firearm. And then they're all polled, and they all say yes. Exactly, Your Honor. And at that point, after that point, there's some confusion about the gang enhancement as applied to co-defendant. And in that context, Juror 12 says, oh, wait a minute, maybe I didn't deliberate on that gang enhancement, and maybe I also didn't deliberate on the gang enhancement as applied to appellant. But then, if I could continue, at that point, immediately after that, the state trial court then repolled the jury as to the gang enhancement applied to appellant. And all of her colleagues on that jury said affirmatively, yes, we did make that true finding on the gang enhancement in the face of her declaration that she didn't. Even Juror 5's comments really suggest that they must have deliberated because he or she, I don't remember. I'm not sure I knew, said was, well, somebody, when we talked about it back there, somebody told me there wasn't a gang enhancement on this guy. Am I the only one who misunderstood that? So it's even his or her comments kind of suggest they talked about it because how else would this misunderstanding have arisen? Exactly, Your Honor. And on that record, what the state trial court faced, it was reasonable for that trial judge to determine, as a factual matter, that the jury actually did deliberate. Not only do we have Juror 12's sort of ambivalence as to whether she deliberated, but then we have the certainty with which her colleagues say that they did deliberate. And given the AEDPA standard, it was quite reasonable for the court to then say, as a matter of fact, that the jury did deliberate. The fact that the jury deliberated means that there can be no due process violation here and habeas relief would not be allowed. I just want to address quickly Judge Graver's point about People v. Bento. Yes, People v. Bento does indicate that once there is a completed verdict and it is recorded, you really can't, under California law, that verdict can't be impeached except perhaps by a motion for a new trial, which is exactly what happened here, actually. But do we even have to address that case to decide this issue? No, Your Honor. You can just decide this issue as a purely AEDPA factual finding deference. Well, I thought we had to rely on California law to, I mean, because we do know within minutes of the verdict being recorded that it's actually not unanimous as to the count that matters for our purposes, right? So I thought we had to, that the state had to rely here on the fact that there was this bright line that doesn't allow impeachment of a verdict based, let's say, on lack of unanimity unless there's some kind of misconduct. I think we only get to that question, Your Honor, under the Hicks opinion, which is what opposing counsel raised. And two points in response to that. I understand opposing counsel's argument as that his due process rights were violated because there was a non-unanimous verdict and the clearly firstly that issue wasn't certified by this court. So I think this court, I mean, this court's certified issue discussed the juror misconduct issue, i.e. the failure to deliberate. So I think this court can dispose of that issue on that grounds. But even if you find that it's cognizable, the fact that the state trial, the same facts that we just discussed about the state trial court finding that the jury deliberated are similar facts that support the factual finding that the jury was also unanimous here. Well, wait, wait, wait. But that doesn't strike me as right. Let's say that the colloquy that we were just looking at where juror number 12 finally says, well, wait a minute. No, that's not my verdict. And in fact, I don't think we deliberated on that. Let's say that occurred before the jury verdict had been recorded. Right. Let's say that the defense counsel, as they should have done, had requested individual polling right when the verdict was first read. If the court said, oh, that's nice, juror 12. Clerk, please record the verdict. Notwithstanding the fact that we knew it wasn't unanimous, you wouldn't be able to stand here and say, oh, but that's just, that's all fine under Hicks, right? It would be a clear due process. I think we can say that, Your Honor, because again, what we're looking at here is the, is whether the state trial court's implicit factual finding that it was unanimous because the state trial court denied the mistrial motion or denied the new trial motion. So it had to make a implicit factual finding that it, the jury, the gang enhancement was deliberated upon and was unanimous. I didn't have to find that it was unanimous, I thought, because I, tell me if I'm wrong on this. I thought it was clear that under California law, recording the verdict, sort of cut off any challenge to the jury's, to the validity of the verdict unless the defendant could show misconduct. And so I thought that's the point at which the judge says, okay, well, if there wasn't deliberation, that would be misconduct. But I obviously have to make some finding that there in fact was deliberation and it did so. I think the misconduct alleged in the new trial motion was both the failure to deliberate and the absence of a unanimous verdict. And so in denying that new trial motion, which, if you look at the penal code under that, that was, it was filed under, which was 1181, the state trial court in denying it also made the implicit factual finding that the verdict was unanimous. It was not a violation of, excuse me. Let me ask you a question this way. Would the outcome be the same if the California Supreme Court decision were not in existence, if there, if there were not the California Supreme Court case that said once the liberations are completed, you can't look into the verdict anymore. Would the outcome be the same, even without that case being, having been decided? I believe so, Your Honor, because again, what the state trial court was faced with was, you know, some evidence that there might've been an issue of juror misconduct, lack of jury unanimity. At that point, the trial court did engage in an inquiry, an inquiry that was appropriate to the potential misconduct alleged. And based on that, what the trial court saw made the factual determination that there was nothing wrong here, nothing wrong here. No reason to grant a new trial motion, no reason to reopen the verdict in any way. I see my time is up. So if there are no further questions, I think not. Thank you. You may have a little rebuttal time. Yeah, that's perfect. Thanks. Your Honor, there's, there's one part we left out. That's on 1936. On 1936, they are specifically polled on the issue of gang enhancement as it relates to Mr. Leone. And juror number 12 says at line 24, number 12, is that your verdict? No. But opposing counsel pointed out that prior to that twice, she or he said yes, when asked if that's your verdict. So couldn't the district court in a credibility determination say that the first two votes had more validity, especially when viewed in conjunction with the votes of the other members of the jury. Why couldn't the district court, why couldn't the trial court make that finding? Because it's the last statement that was said. It was, first of all, it was, it appeared to emerge when the juror was thinking about it. I mean, I think in a reasonable, a reasonable interpretation of the facts is that while they were recording the verdict for Fletus, the juror started thinking and went, wait a minute. We didn't do it for him and we didn't do it for Leone. And then there was a further inquiry. It isn't as if she changed her mind or I don't know, was it he or she? I think it was a she, but I don't know. But then there's, then it is apparently a concern of the trial court. And the trial court keeps asking. And the last statement is, is this your verdict? No. Why doesn't the trial court get to weigh all of that and then make a factual finding regarding whether there was a liberation? Does the court have to take the word of this one juror over the word of the other jurors? Well, as to whether it's her verdict, yes. I mean, I don't know what part of unanimous I'm missing. It means they all got to agree. What you're missing is that initially they were unanimous and the verdict was recorded, but that's the problem for you to overcome. And, and juror 12 is, I think a little equivocal about what, what deliberation was because he or she says, well, I don't recall deliberating on that. We didn't really discuss it. So what is, it's not at all clear. But it's in the context of, is it when, when is she's asked again, is this your verdict? I know that that's a different question. There are two questions. What was the actual vote to convict or to put this enhancement in place? And then secondly, how was that arrived at? Those are two different questions. Ultimately, my position is that this court under EFPA does have to give certain deference to the factual findings of a state court. But when you have a juror who at best is saying, I don't know if I deliberated on it and are looking and seeing whether it is or is not her verdict. And you have the last statement that says no, that EFPA does not tell this court that it has to say black means white, up means down and east means west. When she says no, no means no. So you're saying we discount the other evidence that we're obligated to disregard the other evidence that's in the record. Well, the evidence of other, the evidence is to the opinion of any other juror. No, of course. I mean, and to the extent that and California law would preclude you from then looking and saying, here's this declaration that came in in the motion for a new trial that's a basis for hearsay that another juror might have changed their mind. But when you finally have a juror that's saying, is this your verdict in open court, the verdict has been recorded but they're all still there and says, is this your verdict? And she says no. I still think that's another problem. But that is enough to show that California failed to follow its own law on a process violation. Thank you counsel. I think we understand your position. We appreciate the arguments from both counsel and the case is submitted.
judges: Graber, Rawlinson, Watford